```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 MECHALLE JOSEPH,

                  Plaintiff,              MEMORANDUM & ORDER
                                           23-CV-4562(EK)

       -against-


 COMMISSIONER OF THE SOCIAL SECURITY
 ADMINISTRATION,

                  Defendant.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

        Plaintiff Mechalle Joseph challenges the Social Security Administration's denial of her claim for disability insurance benefits. Joseph is proceeding *pro se*. Before the Court are the parties' cross-motions for judgment on the pleadings. Joseph argues that the administrative law judge failed to develop the record, and therefore seeks remand or an order of benefits. The Commissioner, on the other hand, seeks affirmance of the denial order. For the following reasons, I grant the Commissioner's motion and deny Joseph's motion.

## I. Background

**A. Procedural Background**

        In October 2019, Joseph applied for disability benefits, alleging a disability onset date of June 26, 2018.

Administrative Tr. ("Tr.") 216, ECF No. 9.[1]  The agency denied her claim.  *Id.* at 137, 149.  On June 22, 2021, administrative law judge ("ALJ") Mark Solomon held a hearing on Joseph's claim.  *Id.* at 53.  The ALJ then held a supplemental hearing on September 10 of that year.  *Id.* at 31.  The ALJ concluded that Joseph was not disabled and therefore not entitled to disability benefits.  *Id.* at 16.  The Appeals Council denied Joseph's request for review of the ALJ's decision, rendering it final.  *Id.* at 1.  Joseph timely sought review of that decision in this Court.

**B.   The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims.  20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity.  *Id.* § 404.1520(a)(4)(i), (b).  If not, then at step two, the ALJ

---

[1] Page numbers in citations to the Administrative Transcript refer to the native pagination, not the ECF pagination.

2

evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments"). *Id.* § 404.1520(d); *id.* pt. 404, subpt. P, app. 1. If it does, the ALJ will deem the applicant disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

Here, the ALJ determined that Joseph had not engaged in substantial gainful activity since her alleged onset date. Tr. 17. The ALJ also determined that Joseph suffered from several severe impairments: degenerative disease of the cervical and lumbar spines, right shoulder arthritis, and post-traumatic stress disorder. *Id.* at 18. However, the ALJ concluded that none of these severe impairments rose to the level of a Listed Impairment. *Id.*

When an ALJ finds that the claimant has severe impairments that do not meet or equal the Listed Impairments, he or she must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ concluded here that Joseph had the RFC to perform "light

3

work" subject to certain limitations.  Tr. 19.  Those limitations include restrictions on sitting or standing for more than six hours per day, lifting or carrying more than twenty pounds, and stooping or crawling more than "occasional[ly]."  *Id.*

At step four, the ALJ considers whether the claimant could perform "past relevant work" in light of the RFC determination.  20 C.F.R. § 404.1520(f).  Here, the ALJ found that Joseph could not perform her past work as a security guard or maintenance worker.  Tr. 24.

At step five, the ALJ evaluates whether the claimant could perform jobs existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(g).  At this step, unlike the prior steps, the burden is on the Commissioner.  *Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 127 (2d Cir. 2016).  The ALJ determined that Joseph could perform such jobs, including as a hand packager, production worker, or production inspector.  Tr. 23-25.  Given that conclusion, the ALJ concluded that Joseph was not disabled.  *Id.* at 25.

## II.  Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits.  42 U.S.C. § 405(g).  The review is limited to two questions: whether substantial evidence

4

supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).[2] "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

### III.  Discussion

**A.  Joseph's Cross-Motion[3]**

Joseph raises only one argument in her cross-motion. She claims that the ALJ sent subpoenas for two of her medical providers to the wrong addresses. Pl.'s Ltr. in. Opp. to Gov't Mot. for J. on Pleadings 2, ECF No. 12. That is, she suggests that the ALJ failed to develop the administrative record. *See Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (courts construe *pro se* filings to "raise the strongest arguments that they suggest"). The providers in question were Brooklyn Cancer

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

[3] Joseph does not label her filing as a cross-motion. However, she requests that the Court "grant [her] the relief [she has] wrongly been denied." Pl.'s Ltr. in Opp. to Gov't Mot. for J. on Pleadings 2. Given the obligation to construe *pro se* filings liberally, the Court construes Joseph's opposition brief as a cross-motion for judgment on the pleadings. *Okolo v. Comm'r of Soc. Sec.*, No. 13-CV-4273, 2015 WL 5781417, at *12 (S.D.N.Y. Sept. 30, 2015).

5

Care (where Joseph received infusions to treat an iron deficiency) and APOS Therapy (where Joseph was evaluated for "special orthopedic shoes"). Tr. 36, 62. Joseph does not explain what, if any, further light these providers' records would have shed on the nature of her impairments. Nevertheless, she requests either an order of benefits or, alternatively, a remand to the Commissioner for reconsideration. Pl.'s Ltr. in. Opp. to Gov't Mot. for J. on Pleadings 2.

As set out below, the record does not suggest that the ALJ sent the subpoenas to the wrong address. And the ALJ made reasonable efforts to develop the administrative record. So, the Court denies Joseph's cross-motion.

1. The Subpoenas Appear Properly Addressed

In ruling on a claim for disability benefits, an ALJ "has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). In doing so, the ALJ must develop a claimant's "complete medical history" for at least the preceding twelve months, and make "every reasonable effort to help [the claimant] get medical evidence from [the claimant's] own medical sources." 20 C.F.R. § 416.912(b)(1). This obligation is even more pronounced when the plaintiff is proceeding *pro se*. *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990).

When an ALJ sends a subpoena to the wrong address, and thereby fails to obtain medical records from a source identified by the claimant, he violates his duty to develop the administrative record. *Walton v. Saul*, No. 18-CV-4306, 2019 WL 13222734, at *22 (S.D.N.Y. Sept. 24, 2019); *accord Jones v. Berryhill*, No. 16-CV-6042, 2017 WL 2222245, at *6 (W.D.N.Y. May 22, 2017). A failure to develop the administrative record may be grounds for remand. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

Here, however, nothing in the record or briefing suggests that the ALJ sent the Brooklyn Cancer Care subpoena to the wrong address. The subpoena was addressed to 672 Utica Avenue in Brooklyn, New York. Tr. 211. That is the same address that Joseph gave the ALJ. Tr. 68. It is also the same address that appears on the letters from Brooklyn Cancer Care that Joseph submitted with her responsive briefing.[4] Pl.'s Ltr. in. Opp. to Gov't Mot. for J. on Pleadings 3. Furthermore, Joseph identifies no alternative address to which the subpoenas should have gone. *Id.* at 2. Accordingly, the Court cannot conclude that the ALJ subpoenaed Brooklyn Cancer Care at the wrong address.

---

[4] Some of these letters identify the organization as Brooklyn Cancer Center Medical P.C. *See* Pl.'s Ltr. in. Opp. to Gov't Mot. for J. on Pleadings 3. But other letters, which bear the name of the same physician as the first set of letters, use the name "[B]rooklyn [C]ancer [C]are," which implies that the two names are interchangeable. *See, e.g.*, *id.* at 7-10.

7

The Court cannot conclude that the ALJ misaddressed the APOS subpoena either. That subpoena was addressed to 300 Park Avenue in Manhattan. Tr. 208. This is the address listed for "AposCare NYC" on the AposHealth website.[5] *See Jones*, 2017 WL 2222245, at *2 (comparing subpoena address with addresses available on provider's website); *James v. Venture Home Solar, LLC*, 715 F. Supp. 3d 203, 211 n.5 (D. Conn. 2024) (taking judicial notice that a company's street address on a contract matched the one appearing online). And when the ALJ followed up by telephone, the answering employee did not say that the subpoena had gone to the wrong address. Tr. 349. On the contrary, the employee said he "would check to see if it was received and assist in processing." *Id*. So, the ALJ received no indication that he had sent the subpoena to an incorrect address. Moreover, Joseph again identifies no alternative address to which the subpoena should have gone. Thus, there is nothing in the record to suggest that the APOS subpoena was misdirected.[6]

There is one potential complication here. In her briefing, Joseph included medical records from a physical therapy provider called Hands of Hope PT PC. Pl.'s Ltr. in.

---

[5] *See* https://www.aposhealth.com/locations/#New-York.
[6] As explained in more detail below, the ALJ's follow-up efforts were sufficient under prevailing Social Security regulations.

8

Opp. to Gov't Mot. for J. on Pleadings 31. Those records indicate that Joseph received "AposTherapy treatment" at Hands of Hope, which is located at 1423 Bedford Avenue in Brooklyn. *Id.* Therefore, it is possible that when Joseph told the ALJ that she received "APOS physical therapy," Tr. 61, she was not referring to a clinic or treatment facility called "APOS Therapy" (or some variant thereof). Rather, she was referring to a type of treatment that she was receiving at Hands of Hope. In other words, it is possible that Joseph inadvertently conflated the *type* of treatment she was receiving with the *provider* of that treatment. If that is the case, then it is conceivable that the ALJ's subpoenas should have gone to 1423 Bedford Avenue (i.e., where Hands of Hope is located), not 300 Park Avenue.

Still, it is Joseph's responsibility — not the ALJ's — to identify her "medical source[s]." *See* 20 C.F.R. § 416.912(a)(1)(i). And despite diligent questioning by the ALJ, Joseph consistently stated that she received physical therapy from "APOS" or "APOS physical therapy." *See, e.g.*, Tr. 36, 51, 61. Nothing in the administrative record indicated that Joseph was a patient at Hands of Hope, and Joseph cannot now fault the ALJ for failing to subpoena a treating source that she never identified. *See Brown v. Colvin*, 47 F. Supp. 3d 180, 188-89 (W.D.N.Y. 2014) (rejecting claim that ALJ failed to

9

develop the record by not obtaining opinions from treating physicians, because plaintiff "ha[d] not identified a treating source for the Commissioner to contact").

Moreover, when a claimant appends new evidence to her appeal to the district court, the court may only order the government to consider that evidence "upon a showing that [it] is material and that there is good cause for the failure to incorporate such evidence in the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Fox v. Barnhart*, 137 F. App'x 395, 396 (2d Cir. 2005). Joseph has not shown good cause for her failure to notify the ALJ that Hands of Hope was a treatment source. Nor has she shown that the records from Hands of Hope were material — that is, that there was a "reasonable possibility" that they would have changed the ALJ's ruling. *See Fox*, 137 F. App'x at 396. Thus, the possibility that the ALJ could subpoena Hands of Hope does not justify a remand here.

2. The ALJ Made Reasonable Efforts to Develop the Record

The ALJ ultimately did not receive records from Brooklyn Cancer Care or APOS. But absent any evidence that the subpoenas were misaddressed, we need only ask whether the ALJ made "every reasonable effort" to obtain those records. *See* 20 C.F.R. § 416.912(b)(1). He did.

An ALJ satisfies the "every reasonable effort" obligation by making an initial request and, if the requested records are not forthcoming, making a follow-up request at some point between ten and twenty calendar days after the initial request. *Id.* § 416.912(b)(1)(i). ALJ Solomon satisfied this requirement. He sent the initial evidentiary requests on June 3, 2021. Tr. 618, 623. Then he sent follow-up requests on June 15 — a week before the initial hearing. *Id.* at 639, 642. He followed up again by issuing subpoenas on October 25. *Id.* at 208, 211. And then he called APOS and Brooklyn Cancer Care directly on November 30 to inquire about the status of the subpoenas. *Id.* at 349, 351. Clearly, the ALJ did not abdicate his duty to develop the administrative record.

For these reasons, Joseph's motion for judgment on the pleadings is denied.

**B.   The Government's Cross-Motion**

Joseph has not responded to the substantive arguments outlined in the government's cross-motion for judgment on the pleadings. However, the Court cannot accept the government's arguments simply because Joseph did not address them. Rather, it must "review the record and determine whether the [government] has established that the undisputed facts entitle it to judgment as a matter of law." *Samuels v. Comm'r of Soc. Sec.*, No. 16-CV-5507, 2019 WL 2526943, at *2 (S.D.N.Y. May 21,

11

2019); *see also Polanco v. Comm'r of Soc. Sec.*, 304 F. Supp. 3d 345, 356 (S.D.N.Y. 2018) ("Where, as here, the Court is presented with an unopposed motion, it may not find for the moving party without reviewing the record and determining whether there is a sufficient basis for granting the motion.").

Having reviewed the record, the Court concludes that the ALJ both applied the correct legal standard and reached a conclusion supported by substantial evidence. The ALJ properly applied the five-step process outlined above. *See* Tr. 17-25. And substantial evidence supported his findings at each step.

At step one, the ALJ reasonably found that Joseph was not engaged in substantial gainful activity. Joseph earned only $6,000 from self-employment in the year after the alleged onset of her disability. *Id.* at 17, 60. She also testified that she was unemployed and spent her days visiting her mother, friends, and children. *Id.* at 63.

At step two, the ALJ surveyed extensive medical evidence suggesting the "severe impairments" of "degenerative disease of the cervical and lumbar spines," "right shoulder arthritis," and "post-traumatic stress disorder." *Id.* at 18-23.

Furthermore, at step three, the ALJ reasonably concluded that these impairments did not rise to the level of the Listed Impairments. The closest physical Listed Impairments were Sections 1.15 and 1.16, which deal with skeletal spine

12

injuries. 20 C.F.R. pt. 404, subpt. P, app. 1. But those Listed Impairments require (1) a documented need for a two-handed mobility device or (2) an inability to use one (or, in the case of Section 1.15, both) of the upper extremities for work activities involving "fine and gross movements." *Id.*; Tr. 18. As the ALJ reasonably concluded, the record did not suggest that these requirements had been met.[7] *See, e.g.*, Tr. 65, 603-05.

As for mental Listed Impairments, the closest candidates were for depressive disorders (12.04), anxiety and obsessive-compulsive disorders (12.06) and trauma and stressor-related disorders (12.15). *Id.* at 18. But while Joseph's psychiatric evaluations revealed that she suffered from "dysphoric moods, crying spells, irritability, . . . and fatigue," they also found that these symptoms did not interfere with her "ability to function on a daily basis." *Id.* at 452-54. And Joseph admitted she had no problem following instructions or getting along with others. *Id.* at 269. So, her mental symptoms did not result in the "extreme limitation of one, or marked limitation of two, of the four areas of mental functioning"

---

[7] For the same reason, the ALJ reasonably concluded that Joseph's shoulder injuries did not meet the requirements for any relevant Listed Impairment. Tr. 18.

13

necessary to satisfy the requirements of these Listed Impairments. *Id.* at 18-19; 20 C.F.R. pt. 404, subpt. P, app. 1.

Accordingly, at step four, the ALJ reasonably concluded that while Joseph could not perform her prior work as a security guard or maintenance worker, she could perform "light work" that involved "simple instructions and decisionmaking." Tr. 19-24. This RFC conclusion was consistent with those of state medical consultants, as well as the record as a whole. *See, e.g., id.* at 93, 112-17.

Finally, at step five, the ALJ reasonably relied on the testimony of the Commissioner's vocational expert to conclude that Joseph could perform jobs existing in significant numbers in the national economy. *Id.* at 24-25; *see also id.* at 45-50, 344-46.

In sum, because the ALJ applied the appropriate legal standard and reached a conclusion supported by substantial evidence, his decision must be affirmed.

### IV. Conclusion

For the foregoing reasons, the government's cross-motion for judgment on the pleadings is granted. Joseph's cross-motion is denied. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

                                       /s/ Eric Komitee
                                      ERIC KOMITEE
                                      United States District Judge

Dated:    May 27, 2025
            Brooklyn, New York